# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

COMPREHENSIVE HEALTH OF  )
PLANNED PARENTHOOD OF KANSAS )
AND MID-MISSOURI, INC., and  )
ORRIN MOORE, MD,     )
             )
    Plaintiffs,     )
             )  CIVIL ACTION
v.            )
             )  No. 13-2302-KHV
KIMBERLY TEMPLETON, MD,   )
President of the Kansas Board   )
of Healing Arts,       )
ROBERT MOSER, MD,     )
Secretary of the Kansas Department  )
of Health and Environment,    )
DEREK SCHMIDT, Attorney General  )
of the State of Kansas, and    )
STEPHEN M. HOWE, District Attorney )
for Johnson County, Kansas,    )
in their official capacities,     )
             )
    Defendants.    )
_____)

## MEMORANDUM AND ORDER

On June 20, 2013, plaintiffs Comprehensive Health of Planned Parenthood of Kansas and

Mid-Missouri, Inc. ("Planned Parenthood") and Dr. Orrin Moore filed suit against Kansas state

officials, challenging the constitutionality of certain provisions of recently enacted H.B. 2253, 85th

Leg., Reg. Sess. (Kan. 2013) (the "Act"). This matter is before the Court on Plaintiffs' Motion For

A Preliminary Injunction And Temporary Restraining Order (Doc. #9) filed June 24, 2013.

On June 26, 2013, the Court held a hearing on plaintiffs' motion. All parties appeared

through counsel. Given the abbreviated time between the filing of the motion and the hearing, the

Court did not focus on the label but referred generically (and without objection) to the hearing as

one for a temporary restraining order. As further explained below, however, the proceedings were in the nature of a preliminary injunction hearing. Having thoroughly reviewed the record and analyzed the applicable law, the Court overrules plaintiffs' motion for preliminary injunction.

## I.    Factual Background

### A.    The Challenged Statutory Provisions

Current Kan. Stat. Ann. § 65-6709 provides that "[n]o abortion shall be performed or induced without the voluntary and informed consent of the woman upon whom the abortion is to be performed or induced," and sets forth requirements for voluntary and informed consent. On April 19, 2013, the Governor signed H.B. 2253 (the "Act") into law. See Ex. A to Complaint (Doc. #1). Section 14 of the Act amends Section 6709 to require, as a condition of informed consent, that

> [a]ny . . . facility or clinic in which abortions are performed that has a website shall publish an easily identifiable link on the homepage of such website that directly links to the department of health and environment's website that provides informed consent materials under the woman's-right-to-know act. Such link shall read: "The Kansas Department of Health and Environment maintains a website containing objective, nonjudgmental, scientifically accurate information about the development of the unborn child, as well as a video of sonogram images of the unborn child at various stages of development. The Kansas Department of Health and Environment's website can be reached by clicking here."

Act § 14 (to be codified at Kan. Stat. Ann. § 65-6709(l)) ("the website provision") (Ex. A at 10).[1]

Section 14 of the Act also amends Section 6709 to require, as a condition of informed consent, that a patient be provided a written statement at least 24 hours in advance of the abortion procedure that states:

> by no later than 20 weeks from fertilization, the unborn child has the physical

---

[1]    Under Section 15 of the Act, the State's materials must now contain a statement "that less than 5% of all natural pregnancies end in spontaneous miscarriage after detection of cardiac activity, and a fetal heartbeat is, therefore, a key medical indicator that an unborn child is likely to achieve the capacity for live birth."

structures necessary to experience pain.  There is evidence that by 20 weeks from fertilization unborn children seek to evade certain stimuli in a manner that in an infant or an adult would be interpreted to be a response to pain.  Anesthesia is routinely administered to unborn children who are 20 weeks from fertilization or older who undergo prenatal surgery.

Act § 14 (to be codified at Kan. Stat. Ann. § 65-6709(b)(6)) ("the fetal pain provision") (Ex. A at 8-9).[2]

Under existing Kansas statutes, a physician who performs an abortion without a woman's valid consent, as required by Kan. Stat. Ann. § 65-6709, commits unprofessional conduct and faces significant licensing penalties.  See Kan. Stat. Ann. §§ 65-2836(b), (f), (k); 65-2837(b); 65-2864. See also Kan. Admin. Regs. § 100-6-1.  An act of unprofessional conduct also exposes a physician to prosecution for a misdemeanor and monetary penalties for each separate offense.  See Kan. Stat. Ann. § 65-2862.  A licensed ambulatory surgical center must report to the Kansas Board of Healing Arts when a physician has acted in a manner which may be grounds for disciplinary action.  See Kan. Stat. Ann. §§ 65-28,21(a); 65-4921; 65-4923(a)(2).  Failure to report a physician's unprofessional conduct carries penalties against the medical facility, including possible licensure suspension, revocation or limitation by KDHE, as well as civil and criminal penalties.  See Kan. Stat. Ann. §§ 65-4927(b), (c); 65-28,121(a), (c); 65-430.

**B.    Background Facts Regarding Plaintiffs' Services[3]**

---

[2]    Existing Kan. Stat. Ann. § 65-6709(b)(5) requires, as a condition of informed consent, that a woman be provided a written statement at least 24 hours in advance of the abortion procedure which states that "the abortion will terminate the life of a whole, separate, unique, living human being."  Plaintiffs' lawsuit also challenges the constitutionality of this provision under the First and Fourteenth Amendments.  Plaintiffs' motion for injunctive relief, however, does not relate to this provision, and the Court does not address it further in this memorandum and order.

[3]    The Court has not engaged in fact-finding, but for purposes of ruling on the motion, the Court accepts as true this background information provided by plaintiffs.

Planned Parenthood, a not-for-profit corporation, provides abortion services at its licensed ambulatory surgical center in Overland Park, Kansas. Plaintiff Orrin Moore, M.D. is a Board Certified obstetrician and gynecologist licensed to practice medicine in Kansas. Dr. Moore is the Medical Director of Planned Parenthood and its primary abortion care provider.

Approximately 90 per cent of abortions performed at Planned Parenthood terminate a pregnancy in the first trimester, i.e. through 13 weeks LMP.[4] Approximately 99 per cent of the abortions terminate pregnancies that are no later than 20 weeks LMP (no later than 18 weeks from fertilization). Plaintiffs assert that they maintain a close, confidential relationship with their patients, who seek to keep private their pregnancy and health care. In addition to abortion services, Planned Parenthood provides a range of other reproductive health care.

Planned Parenthood maintains a public website[5] to convey information about its services, reproductive health information and educational or training opportunities. In 2012, the website received 46,500 visits from 28,900 visitors. Some visitors are patients (both abortion and non-abortion patients). Plaintiffs comply with all current statutory requirements relating to informed consent for abortion, including that an abortion patient, at least 24 hours in advance of the procedure, be informed in writing that state-created materials are available in printed form and on line that "describe the unborn child, list agencies which offer alternatives to abortion with a special section listing adoption services and list providers of free ultrasound services," Kan. Stat. Ann. § 65-6709(b)(2), and be given the state-created materials, see id. § 65-6709(d). As required by current

---

[4] Planned Parenthood measures gestational age from the first day of the woman's last menstrual period ("LMP"). The exact date of fertilization is rarely known; it typically occurs 14 days after the first day of the LMP, which means that a gestational age referred to in terms of fertilization is typically two weeks earlier than one measured by the LMP.

[5] http://www.plannedparenthood.org/comprehensive-health/.

law, Kan. Stat. Ann. § 65-6710(b), KDHE maintains a website[6] that contains the government's viewpoint about what materials and statements a woman should consider prior to having an abortion, including numerous statements about a fetus.

## C. The Lawsuit

Plaintiffs filed this action under 42 U.S.C. § 1983, challenging provisions of the Act and of existing law under the First and Fourteenth Amendments. First, plaintiffs contend that by compelling Planned Parenthood to unwillingly place on its public website a hyperlink to a government website, and deliver a scripted government message endorsing information on the government's website, the Act[7] violates its free speech rights under the First Amendment, as applied through the Fourteenth Amendment. Second, plaintiffs challenge the requirement that Dr. Moore communicate to every abortion patient (a) irrelevant and misleading statements related to whether a fetus at or no later than 20 weeks post-fertilization can feel pain,[8] and (b) the government's ideological message that a woman's "abortion will terminate the life of a whole, separate, unique, living human being."[9] Plaintiffs claim that the Act and existing law violate Dr. Moore's free speech rights under the First Amendment, as applied through the Fourteenth Amendment. Third, plaintiffs assert that by preventing a woman from having an abortion unless plaintiffs engage in impermissible compelled public speech and make statements to patients seeking abortions that are untruthful, misleading, and/or not relevant to those women, the Act and existing Kan. Stat. Ann. § 65-6709(b) violate the rights of plaintiffs' patients under the Fourteenth Amendment.

---

[6]     http://www.womansrighttoknow.org/.

[7]     Provision to be codified at § 65-6709(l) ("website provision").

[8]     Provision to be codified at § 65-6709(b)(6)" ("fetal pain provision").

[9]     Provision of existing law at Kan. Stat. Ann. § 65-6709(b)(5).

Plaintiffs seek injunctive relief which enjoins defendants from (1) enforcing the two challenged provisions in Section 14 of the Act and (2) taking any action for violations of the challenged provisions.[10]

Defendants respond that plaintiffs have failed to make the requisite clear showing of any of the traditional requirements for the extraordinary equitable relief of a temporary restraining order.[11] They ask the Court to overrule the motion and instead set a litigation schedule to accomplish a speedy final resolution on the merits.

## II.    Legal Standards

To obtain a preliminary injunction, plaintiffs must show (1) a substantial likelihood that they will prevail on the merits, (2) they will suffer irreparable injury unless the motion is granted; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing parties; and (4) the injunction, if issued, would not be adverse to the public interest.[12]  O Centro

---

[10]    Plaintiffs do not seek preliminary injunctive relief regarding their challenge to current law set out in Kan. Stat. Ann. § 65-6709.

[11]    Defendants assert that because state statutes are presumptively constitutional, the challenged statute should remain in effect pending a final decision on the merits by the Court.  Cf. Marshall v. Barlow's, Inc., 429 U.S. 1347, 1348 (1977); New Motor Vehicle Bd. of Cal. v. Fox Co., 434 U.S. 1345, 1352 (1977).

[12]    The Tenth Circuit has "adopted the Second Circuit's liberal definition of the 'probability of success' requirement."  Nova Health Sys. v. Edmondson, 460 F.3d 1295, 1299 n.6 (10th Cir. 2006) (quoting Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003)). Generally, where the moving party has established that the three "harm" factors tip decidedly in its favor, the "probability of success requirement" is somewhat relaxed and "the movant need only show questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation."  Id. (quotations, alterations, emphasis omitted).  But the Tenth Circuit has also adopted the Second Circuit's qualification that "'where a preliminary injunction seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme, the less rigorous fair-ground-for-litigation standard should not be applied.'"  Id. (quoting Sweeney v. Bane, 996 F.2d 1384, 1388 (2d Cir. 1993)).  Thus where, as here, plaintiffs seek to enjoin
(continued...)

Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 342 F.3d 1170, 1177 (10th Cir. 2003); Utah v. Babbitt, 137 F.3d 1193, 1200 n.7 (10th Cir. 1998). Whether to grant a preliminary injunction rests within the Court's sound discretion. Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC, 562 F.3d 1067, 1070 (10th Cir. 2009). And because it is an extraordinary remedy, the right to relief must be clear and unequivocal. Id.

Federal Rule of Civil Procedure 65 addresses procedural issues with respect to temporary restraining orders and preliminary injunctions. While a temporary restraining order may issue without notice and expires within 14 days unless extended by the court or by consent of the restrained party, a preliminary injunction cannot issue without notice and usually remains in effect until a final determination on the merits. See Fed. R. Civ. P. 65(b)(2), (a)(1). Accordingly, where adequate notice was not at issue and defendants were afforded and availed themselves of the opportunity to be heard, the Court construes the hearing on June 26th as a preliminary injunction hearing.[13] See In re Criminal Contempt Proceedings Against Gerald Crawford, Michael Warren, 329 F.3d 131, 136-38 (2d Cir. 2003) (order denominated as TRO but issued after notice and hearing was preliminary injunction); see also Hodes & Nauser v. Moser, 2:11-cv-02365-CM, 2012 WL 1831549, at *2 (D. Kan. May 18, 2012) (preliminary injunction ruling issued at conclusion of hearing on motion for TRO and preliminary injunction held three days after complaint filed).

---

[12](...continued)
enforcement of a statute, a showing that the questions are "fair ground for litigation" is not enough; plaintiffs must meet the traditional "substantial likelihood of success" standard. See id.; see also Union Carbide Agric. Prods. Co. v. Costle, 632 F.2d 1014, 1018 (2d Cir. 1980) ("When Congress authorizes or mandates governmental action that is in the public interest, more than a 'fair ground for litigation' must be shown before the action will be stopped in its tracks by court order.").

[13]     Consequently, the proceedings scheduled for July 29, 2013 will be a trial on the merits.

**III.     Analysis**

   **A.     Fetal Pain Provision**

   Plaintiffs asserts that the Act's requirement that a physician provide a woman seeking an abortion information relating to the capacity of a fetus to feel pain at a specific gestational age violates Dr. Moore's First Amendment rights against compelled speech.

   **1.     Likelihood Of Prevailing On The Merits[14]**

   "The First Amendment, as applied to state and local governments through the Fourteenth Amendment, provides that state actors 'shall make no law . . . abridging the freedom of speech.'" Cressman v. Thompson, ___ F.3d ____, 2013 WL 2501938, at *6 (10th Cir. June 12, 2013) ((quoting Hawkins v. City & Cnty. of Denver, 170 F.3d 1281, 1286 (10th Cir. 1999)) (quoting U.S. Const., amend. I). At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration and adherence.[15] Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc., ___ S.Ct. ___, No. 20-10, 2013 WL 3064411, at *11 (June 20, 2013) (requirement that funding recipients involuntarily adopt

_____

[14]     Defendants assert that the Court must analyze irreparable injury first. See Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1260 (10th Cir. 2004) ("[b]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered"). But in many First Amendment cases, courts focus first (or only) on the likelihood of prevailing on the merits. See, e.g., Homans v. City of Albuquerque, 264 F.3d 1240, 1244-45 (10th Cir. 2001) (where plaintiff demonstrated substantial likelihood of success on merits, public interest served by protecting core First Amendment right of political expression); Quinly v. City of Prairie Vill., Kan., 446 F. Supp.2d 1233, 1237 (D. Kan. 2006) (focusing on substantial likelihood of success in First Amendment case because it is often determinative factor).

[15]     The Supreme Court has recognized that the First Amendment applies to corporations. Citizens United v. FEC, 558 U.S. 310, 312 (2010); Pac. Gas & Elec. Co. v. Pub. Util. Comm'n of Cal., 475 U.S. 1, 907 (1986) (corporations and other associations, like individuals, contribute to discussion, debate and dissemination of information and ideas that First Amendment seeks to foster).

-8-

and endorse government policy of opposing prostitution violates First Amendment). Thus, just as the First Amendment may prevent the government from prohibiting speech, it may prevent the government from compelling expression of certain views. See id.; Cressman, 2013 WL at *6 (citing United States v. United Foods, Inc., 533 U.S. 405, 410 (2001); Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos., 515 U.S. 557, 573 (1995) (important manifestation of free speech is that "one who chooses to speak may also decide what not to say"); Wooley v. Maynard, 430 U.S. 705, 715 (1977) (state requirement that plaintiffs display state motto, "Live Free or Die," on vehicle license plate violated first amendment by forcing them to use private property as mobile billboard for state's ideological message")).

In Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 884 (1992) (plurality opinion), the Supreme Court held that "a requirement that a doctor give a woman certain information as part of obtaining her consent to an abortion" implicates a physician's First Amendment right not to speak, "but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State." The Supreme Court found no violation of the physician's right not to speak, where physicians were merely required to give "truthful, nonmisleading information" relevant to the patient's decision to have an abortion, id. at 882, and it did not address whether the requirements were narrowly tailored to serve a compelling state interest. Id. In Casey, the Supreme Court deemed relevant not only information about the medical risks of abortion, but also information that child's father would be liable for child support and that other organizations offered alternatives to abortion. Id. at 881, 902-03. The Court found such information relevant because it "furthers the legitimate purpose of reducing the risk that a woman may elect an abortion, only to discover later, with devastating psychological consequences, that her decision was not fully informed." Id. at 882-83 (fact that information might cause woman to choose childbirth

over abortion did not render provisions unconstitutional).

In Gonzales v. Carhart, 550 U.S. 124, 157 (2007), the Supreme Court reaffirmed that in the context of abortion "it is clear the State has a significant role to play in regulating the medical profession" and that "[t]he government may use its voice and its regulatory authority to show its profound respect for the life within the woman." It described in detail the state interest in regulating the information provided by physicians prior to an abortion. See id. at 159 (whether to have abortion requires difficult and painful moral decision and state has interest in ensuring so grave a choice is well informed). Casey and Gonzales establish that while the state cannot compel an individual simply to speak its ideological message, it can use its regulatory authority to require a physician to provide truthful, non-misleading information relevant to a patient's decision to have an abortion, even if that information might also encourage the patient to choose childbirth over abortion.

Plaintiffs assert that the state cannot constitutionally require Dr. Moore to provide patients information about the capacity of a fetus to feel pain at 20 weeks from fertilization. At this point in the litigation, plaintiffs do not assert that such a statement would be inaccurate. Rather, they point to Dr. Moore's affidavit that he provides abortions only up to 19 weeks and 6 days post-fertilization. Moore Decl. ¶ 8. Plaintiffs assert that because he does not perform abortions at the gestational age at which the Act implies a fetus may experience pain, such information is not relevant to his patients' decision to have abortions; thus, compelling him to provide such information violates his First Amendment rights.

In Planned Parenthood of Indiana v. Commissioner of Indiana Department of Health, 794 F. Supp.2d 892, 921 (S.D. Ind. 2011), rev'd in part on other grounds, 699 F.3d 962 (7th Cir. 2012), the district court enjoined enforcement of a requirement that an abortion provider who provided only first trimester abortions inform all patients that a fetus can feel pain at or before 20 weeks

post-fertilization. There, the record contained no evidence to support a finding that even a minority view within the scientific community contended that the perception of pain was possible during the first trimester of pregnancy. The court found that because plaintiffs exclusively performed abortions in the first trimester, requiring them to state that "objective scientific information shows that a fetus can feel pain at or before twenty weeks of postfertilization age" could be false, misleading and irrelevant.

By contrast, Dr. Moore provides abortions for patients at gestation of up to nearly 20 weeks. Further, at this point in the litigation, it is an unresolved question of fact whether "objective scientific information shows that a fetus can feel pain at or before twenty weeks of postfertilization." Therefore, plaintiffs have not made a substantial showing of a substantial likelihood of success on the merits with regard to the fetal pain requirement.

## 2. Irreparable Injury

Plaintiffs satisfy the irreparable harm requirement by demonstrating "a significant risk that [they] will experience harm that cannot be compensated after the fact by monetary damages." RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1209 (10th Cir. 2009) (citing Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1258 (10th Cir. 2003)). Purely speculative harm will not suffice, but "[a] plaintiff who can show a significant risk of irreparable harm" satisfies the burden. Id.

In determining whether plaintiffs have made the requisite showing, the Court determines "whether such harm is likely to occur before the district court rules on the merits." Flowers, 321 F.3d at 1260; see Winter v. Nat'l Res. Defense Council, Inc., 555 U.S. 7, 22 (2008) (plaintiffs seeking preliminary relief must demonstrate that irreparable injury is *likely* in absence of injunction). An injury must be certain, great, actual "and not theoretical." Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003). Irreparable harm is not harm that is "merely serious or

substantial." Id. The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. Id.

Plaintiffs point out that generally, when a plaintiff alleges deprivation of First Amendment rights, courts do not require more in the showing of irreparable harm. Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001); ACLU v. Johnson, 194 F.3d 1149, 1163 (10th Cir. 1999) (curtailment of constitutionally protected speech is sufficient showing of irreparable injury); Bey v. Douglas Cnty. Corr. Facility, 540 F. Supp.2d 1194, 1197 (D. Kan. 2008) (when plaintiff alleges deprivation of First Amendment rights, courts do not require more for irreparable harm). This issue is moot because plaintiffs have not shown a substantial likelihood that plaintiffs will prevail on the merits.

### 3.    Threatened Injury Versus Harm To Opposing Party

Plaintiffs argue that defendants will suffer no measurable harm if the Court grants an injunction. They point out that plaintiffs already inform abortion patients about the state materials, and assert that defendants cannot show that the current requirements do not adequately protect women seeking abortions. Plaintiffs further argue that defendants can have no valid interest in enforcing an unconstitutional law, while denial of the injunction would deprive plaintiffs of their constitutional rights, and cause immediate and irreparable harm. See Johnson, 194 F.3d at 1163 (threatened injury to plaintiffs' constitutionally protected speech outweighed whatever damage preliminary injunction might cause to defendants' inability to enforce what appeared to be unconstitutional statute); Quinly, 446 F. Supp. 2d at 1237 (no injury to municipality prevented from enforcing unconstitutional statute).

Defendants respond that the State has an interest in the enforcement of any statute. Defendants argue that plaintiffs cannot make a clear, unequivocal showing that their alleged injury

outweighs the significant harms to the interests of the State of Kansas if the law were to be enjoined. The Court agrees.

### 4.     Public Interest

Plaintiffs argue that granting an injunction in this case will serve the public interest. Vindicating First Amendment freedoms is clearly in the public interest. Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1237 (10th Cir. 2005); see also Elam Constr., Inc. v. Reg'l Transp. Dist., 129 F.3d 1343, 1347 (10th Cir. 1997) (public interest also favors plaintiffs' assertion of First Amendment rights). Additionally, the public more generally has an interest in protecting constitutional rights. See Mease v. City of Shawnee, 266 F. Supp.2d 1270, 1275 (D. Kan. 2003) (citing Adams v. Baker, 919 F. Supp. 1496, 1505 (D. Kan. 1996)); see also U.S. Chamber of Commerce v. Edmondson, 594 F.3d 742, 771 (10th Cir. 2010).

Defendants assert that the public has a strong interest in resolving the relevant policy questions through the democratic process and that "[w]e should not forget that 'legislatures are ultimate guardians of the liberties and welfare of the people in quite as great a degree as the courts.'" Maher v. Roe, 432 U.S. 464, 479-80 (1977) (quoting Justice Holmes in Mo., Kan. & Tex. Ry. Co. v. May, 194 U.S. 267, 270 (1904)). Defendants argue that the public interest is served by permitting the Kansas law to take effect pending an orderly and well-considered judicial resolution of the constitutional merits of the law. Again, because the Court has found that plaintiffs have not shown a substantial likelihood of success on the merits of their claim regarding the fetal pain disclosure, the Court finds that the public interest weighs against issuing an injunction.

**B.** **Website Provision**

Plaintiffs contend that the website provision of the Act violates Planned Parenthood's First Amendment rights because it compels Planned Parenthood to unwillingly place on its public website a hyperlink to a government website, and to deliver a scripted government message endorsing information on the government website. Specifically, Planned Parenthood objects to the requirement that it endorse the state materials by declaring on its website homepage that certain information on the state website is "objective, nonjudgmental, and scientifically accurate."[16] Planned Parenthood believes that several aspects of the state materials are inaccurate, judgmental and not objective. Planned Parenthood contends that it cannot continually monitor the government website to ensure that it is scientifically accurate, objective and non-judgmental, or monitor the linked websites that convey information about fetal development. Planned Parenthood also contends that the proposed provisions do not allow Dr. Moore to disassociate himself from the required disclosures. Defendants respond that the statute does not prevent plaintiffs from presenting disclaimers or other information on their website, or supplemental links to information. They assert that plaintiffs are free to provide an explanation that certain information on their website is required by law or even to include a disclaimer that plaintiffs disagree with the statement or the KDHE

_____

[16] For example, on the government website the document titled "If You are Pregnant" states that "pregnancy begins at conception with the union of a man's sperm and a woman's egg." Planned Parenthood believes that pregnancy is established only upon implantation, which typically occurs five to nine days following fertilization. The state materials also declare that "[a]bortion terminates the life of a whole, separate, unique, living human being." Planned Parenthood argues this is not an objective, nonjudgmental and scientifically accurate statement. Further, under the Act, the state website now will contain the newly required statement that "less than 5% of all natural pregnancies end in spontaneous miscarriage after detection of cardiac activity, and a fetal heartbeat is, therefore, a key medical indicator that an unborn child is likely to achieve the capacity for live birth." Plaintiffs assert that this statement is not an accurate statement and that medical literature suggests that close to 10% of all natural pregnancies end in spontaneous miscarriage after detection of cardiac activity.

website.

**1.      Likelihood Of Prevailing On The Merits**

The Supreme Court has extended the "reasoning of compelled-speech cases to certain instances in which individuals are compelled not to speak, but to subsidize a private message with which they disagree." Cressman, 2013 WL 2501938, at *10 (citing Johanns v. Livestock Mktg. Ass'n, 544 U.S. 550, 557 (2005)). It also has struck down content-based government requirements that burden free speech rights. See Agency for Int'l Dev. v. Alliance for Open Soc'y Int'l, Inc., ___ S.Ct. ___, No. 20-10, 2013 WL 3064411, at *11 (June 20, 2013) (requirement that funding recipients involuntarily adopt and endorse government policy of opposing prostitution violates First Amendment); Riley v. Nat'l Fed'n of the Blind, 487 U.S. 781, 797-98 (1988) (unconstitutional for state to require professional fundraisers to disclose certain factual information to potential donors before soliciting funds). Generally, the principle that "the speaker has the right to tailor the speech, applies not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid." Cressman, 2013 WL 2501938, at *10.

As the Tenth Circuit recently pointed out in Cressman, ideological speech is not the only form of forbidden compelled speech. 2013 WL 2501938, at *11; see Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 61 (2006) (like compelled statements of opinion, compelled statements of fact subject to First Amendment scrutiny); Hurley, 515 U.S. at 573 (compelled speech doctrine applies to statements of fact the speaker would rather avoid); Riley, 487 U.S. at 797-98 (like compelled statements of opinion, compelled statements of fact burden protected speech); cf. Axson-Flynn v. Johnson, 356 F.3d 1277, 1281-1284 n.4 (10th Cir. 2004) (university theater student alleged First Amendment violation when required to utter swear words as part of script). The constitutional harm of compelled speech – being forced to speak rather than to remain

-15-

silent – "occurs regardless of whether the speech is ideological." <u>Cressman</u>, 2013 WL 2501938, at *11.

Plaintiffs note that a webpage conveys information "to the outside world" about the owner of the webpage, and through the use of links on the website "communicate[s] an important message about itself." <u>Sutliffe v. Epping Sch. Dist.</u>, 584 F.3d 314, 331 (1st Cir. 2009). Plaintiffs assert that Planned Parenthood has an important stake in controlling the message it distributes on its webpage, and strongly objects to being required to lend its imprimatur to information it does not agree with and believes is inaccurate. Plaintiffs assert that the website provision is a content-based regulation that is subject to "exacting First Amendment scrutiny" which demands that the regulation be narrowly tailored to achieve a compelling state interest. <u>Riley</u>, 487 U.S. at 798.[17] The Court agrees.

Plaintiffs argue that the requirement that Planned Parenthood place a message on its homepage which essentially endorses the information on the KDHE website is not narrowly tailored to achieve a compelling state interest. Rather, they argue, the requirement is similar to that in <u>Wooley</u>, in which the Supreme Court found unconstitutional a requirement that drivers carry a state motto on their license plates. <u>See</u> 430 U.S. at 715. <u>Wooley</u> may be distinguishable, however, because here, the required statement that the state website contains accurate information about fetal development does not necessarily carry an ideological message.[18] Defendants respond that medical

_____

[17]    If Planned Parenthood's website contains only commercial speech, it is not entitled to a high level of scrutiny. <u>See</u> <u>Bolger v. Youngs Drug Prods. Corp.</u>, 463 U.S. 60, 66-68 (1983) (brochures discussing "important public issues such as venereal disease and family planning" distributed by contraceptives manufacturer contained commercial speech because they contained advertisements, referenced specific products and speaker had economic motive for engaging in speech). It seems more likely, however, that Planned Parenthood's website would be considered to contain both commercial and noncommercial speech, and is entitled to the higher level of First Amendment protection. <u>See</u> <u>Riley</u>, 487 U.S. at 796.

[18]    Further, as defendants point out, plaintiffs are free to place a statement on their

(continued...)

providers are always subject to reasonable licensing and regulation by the state. See Casey, 505 U.S. at 882. Further, the state has a strong interest in ensuring that an abortion decision is well informed, and it may require physicians to make available to patients information that is truthful and not misleading. See Casey, 505 U.S. at 882. Planned Parenthood uses its website to provide education and to promote its activities and health care services, including abortions. Although many visitors to the website are not patients, requiring such websites to include truthful and non-misleading information related to abortion arguably promotes the state interest in ensuring that abortion decisions are well-informed. Whether such a requirement is narrowly tailored to promote the state interest is a close question.

Clearly, plaintiffs' claim regarding the website provision implicates complex First Amendment issues which, due to the press of time, neither the parties nor the Court have yet to adequately address. Even if the Constitution permits the required speech as to patients, the requirement appears overbroad in the context of other visitors to the website. The Court assumes, without deciding, that plaintiffs have met their burden to set forth a showing of a substantial likelihood of success on the merits of this issue.

### 2. Irreparable Injury

Plaintiffs again point out that generally when a plaintiff alleges the deprivation of First Amendment rights, courts do not require more in the showing of irreparable harm. Kikumura, 242 F.3d at 963; Bey, 540 F. Supp.2d at 1197 (when plaintiff alleges deprivation of First Amendment rights, courts do not require more as to irreparable harm). Defendants argue that plaintiffs cannot show irreparable harm because they can provide an explanation that certain

---

[18](...continued)
website that they are required by law to include the statement.

information on the website is required by law or even a disclaimer that plaintiffs disagree with the statement or the KDHE website. The Court does not find defendants' argument on this point particularly persuasive.

Recent developments in a pending state court case bear directly on the issue of irreparable harm. On June 28, 2013, the Shawnee County, Kansas District Court issued a temporary injunction which enjoins state officials and their agents from enforcing the website provision of Act.[19] See Hodes & Nauser v. Schmidt, 13-C705, slip opinion (Shawnee Cnty, Kan. Dist. Ct., June 28, 2013). At this point, therefore, plaintiffs cannot show that they would suffer irreparable injury if the Court did not enter temporary injunctive relief in this case.

### 3. Threatened Injury Versus Harm To Opposing Party

Plaintiffs argue that defendants will suffer no measurable harm if the Court grants an injunction and that defendants have no valid interest in enforcing an unconstitutional law. Plaintiffs assert that denial of the injunction would deprive them of their First Amendment rights and cause immediate harm. See Johnson, 194 F.3d at 1163. Again, because the Shawnee County District Court has enjoined state officials from enforcing the website provision of the Act, this factor weighs against this Court granting an injunction at this time.

### 4. Public Interest

Plaintiffs argue that vindicating First Amendment freedoms is clearly in the public interest. Pac. Frontier v. Pleasant Grove City, 414 F.3d 1221, 1237 (10th Cir. 2005); see also Edmondson,

---

[19] Plaintiffs in Hodes sought to enjoin enforcement of the entire Act. The Shawnee County District Court has enjoined enforcement of the website provision and also Section 12(g), which relates to emergency abortions and a 24 hour waiting period. The court otherwise overruled plaintiffs' motion for a temporary restraining order or preliminary injunction. Hodes & Nauser v. Schmidt, slip opinion, 13-C705 (Shawnee Cnty Kan. Dist. Ct., June 28, 2013).

594 F.3d at 771 (state has no interest in enforcing law that is likely unconstitutional).  Plaintiffs also argue that the public has an interest in Planned Parenthood and its physicians maintaining their practice and continuing to serve the hundreds of women who seek its abortion services each month.  Again, because defendants are currently enjoined from enforcing the website provision of the Act, at this time the statute does not pose a threat to Planned Parenthood's continued provision of services.  This factor weighs against an injunction.

### C.    Patients' Fourteenth Amendment Rights[20]

Plaintiffs argue that the fetal pain provision effectively prohibits a physician from performing an abortion unless the physician provides a woman irrelevant, misleading, and untruthful information which implies that a fetus can feel pain at a gestational age at which none of plaintiffs' patients are seeking an abortion.  Plaintiffs therefore assert that as applied to plaintiffs' patients, this provision is an undue burden on their constitutional right to have an abortion.

_____

[20]    A plaintiff generally "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," but this rule is not absolute.  Kowalski v. Tesmer, 543 U.S. 125, 129 (2004).  In instances where enforcing a challenged restriction against plaintiff would result in a violation of a third party's rights, courts may allow claims brought on behalf of that third party.  Id.  To prevail, plaintiffs must show that "the party asserting the right has a close relationship with the person who possesses the right" and that "there is a hindrance to the possessor's ability to protect his own interests."  Id. at 130; Aid for Women v. Foulston, 441 F.3d 1101, 1111-12 (10th Cir. 2006).  This standard is appropriate here because plaintiffs allege that enforcing Kan. Stat. Ann. § 65-6709 against them will also infringe on the Fourteenth Amendment right of their patients to have an abortion.

Courts recognize that in the abortion context, the physician-patient relationship satisfies the "close relationship" prong of this test.  Singleton v. Wulff, 428 U.S. 106, 118 (1976) (generally appropriate to allow physician to assert rights of women patients as against governmental interference with abortion decision).  Aid for Women cites a number of other cases that agree with this assessment.  441 F.3d at 1112-13.  The court also asks whether the patient's ability to protect her own legal interests is genuinely hindered.  Singleton points out two issues facing patients who choose to have abortions: a chilling effect from the patient's desire to protect the privacy of her decision and an imminent technical mootness to each individual patient's claim.  428 U.S. at 117.  These observations apply to plaintiffs' claims here.

## 1.    Likelihood Of Prevailing On The Merits

Prior to the viability of her fetus, a woman has a constitutional right to choose to terminate her pregnancy. <u>Casey</u>, 505 U.S. at 870.  Meanwhile, states have a legitimate and important interest in protecting the potential of human life – an interest recognized in <u>Roe v. Wade</u> that "has been given too little acknowledgment and implementation by the [Supreme] Court in its subsequent cases." <u>Casey</u>, 505 U.S. at 871.  At any stage of pregnancy, a state may further that interest by enacting rules and regulations to ensure that the choice to terminate a pregnancy is thoughtful and informed. <u>Id.</u>  The Supreme Court has held that the state may not place an undue burden on a woman's decision to have an abortion before viability. <u>See</u> <u>Casey</u>, 505 U.S. at 874.

Before viability, a state regulation is invalid if it has the *purpose or effect* of placing a substantial obstacle in the path of a woman seeking an abortion. <u>Id.</u> at 877.  Informed consent requirements prior to an abortion may be permissible only if they mandate the disclosure of ''truthful and not misleading'' information. <u>Id.</u> at 882.  The state may express in a variety of ways its respect for life, including life of the unborn, provided that its requirements ''inform the woman's free choice, not hinder it.'' <u>Id.</u> at 877.  Procedures that ''amount in practical terms to a substantial obstacle to a woman seeking an abortion'' are an undue burden and therefore constitutionally prohibited. <u>Id.</u> at 884.  As set out above, <u>Casey</u> held that if the State requires a woman to receive information as a condition of exercising her right to an abortion, the information cannot be untruthful or misleading, and must be relevant to her decision. <u>Id.</u> at 882.

In the context of plaintiffs' free speech claims, the Court has noted that the question whether the challenged provision requires physicians to provide patients misleading, untruthful and/or irrelevant information is a question of fact.  On this record, the Court finds that plaintiffs have not shown a substantial likelihood of success on the merits as to their patients' rights under the

Fourteenth Amendment.

### 2. Irreparable Injury

Plaintiffs note that courts have found that a violation of Fourteenth Amendment rights constitutes irreparable injury. See Planned Parenthood of Kansas, Inc. v. City of Wichita, 729 F. Supp. 1282, 1291 (D. Kan. 1990) (irreparable injury due to threat to important constitutional rights of plaintiffs and their clients); Adams v. Baker, 919 F. Supp. 1496, 1505 (D. Kan. 1996) (deprivation of a constitutional right itself irreparable harm). Here, however, the Court does not find a substantial showing of violation of the Fourteenth Amendment.

Defendants note that to the extent that Dr. Moore's patients may be confused or misled by fetal pain information, physicians are required to answer their patients' questions. See Kan. Stat. Ann. § 65-6709. Defendants contend that physicians can provide patient-specific information that may clear up any confusion. Thus, they assert that harm is at best speculative, and easily avoidable by talking with patients and providing written materials of their choice. As with plaintiffs' speech claim regarding the fetal pain provision, the Court finds that plaintiffs have not shown irreparable injury.

### 3. Threatened Injury Versus Harm To Opposing Party

Plaintiffs argue that defendants will suffer no measurable harm if the Court grants an injunction, that plaintiffs already inform abortion patients about the state materials, and that defendants cannot show that the current requirements do not adequately protect women seeking abortions. Plaintiffs further argue that defendants can have no valid interest in enforcing an unconstitutional law, while denial of the injunction would deprive their patients of constitutional rights. See Quinly, 446 F. Supp.2d at 1237 (no injury to municipality prevented from enforcing unconstitutional statute); Homans, 264 F.3d at 1244-45).

Defendants counter that the state has an interest in enforcing a valid statute. Defendants argue that plaintiffs have not made a clear, unequivocal showing that their alleged injury outweighs the harms to the interests of the State of Kansas if the law were to be enjoined. The Court agrees.

**4.      Adverse To Public Interest**

As with their other claims, plaintiffs argue that granting an injunction will serve the public interest because the public more generally "has an interest in protecting constitutional rights." <u>See</u> <u>Edmondson</u>, 594 F.3d at 771 (no state interest in enforcing law that is likely unconstitutional). Defendants again assert that the public has a strong interest in resolving the relevant policy questions through the democratic process. <u>See</u> <u>Maher</u>, 432 U.S. at 479-80. For the same reasons set forth as to plaintiffs' First Amendment claim regarding fetal pain, the Court finds that this factor weighs against an injunction.

**For the foregoing reasons, the Court finds that plaintiffs are not entitled to a temporary restraining order or a preliminary injunction.**

**IT IS THEREFORE ORDERED that** <u>Plaintiffs' Motion For A Preliminary Injunction And Temporary Restraining Order</u> (Doc. #9) filed June 24, 2013 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED that the parties shall immediately advise the Court of any change in the state court injunction proceedings, in order that this Court may further address the need for injunctive relief, if necessary.**

Dated this 30th day of June, 2013 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
Kathryn H. Vratil
United States District Judge